Leave to file
GRANTED

RM Colly
9/13/10

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WEST BAY ONE, INC.
    Plaintiff,

v.

DOES 1-1,653

    Defendants.

)  Case No.: 1:10-cv-00481-RMC

)

)

)  Motion and Memorandum to Quash Subpoena
)  Pursuant to Fed. R. Civ. P. 45(c)(3) and
)  Motion to Dismiss Pursuant to Fed. R. Civ. P.
   12(b)(2)

)

)

)

)

)

)

)

---

**OMNIBUS MOTION  & MEMORANDUM TO QUASH SUBPOENA PURSUANT TO FED. R. CIV. P. 45(C)(3) AND TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2)**

## I.  TABLE OF CONTENTS

I.TABLE OF CONTENTS..................................................................................................................1

II.TABLE OF AUTHORITIES........................................................................................................2

  A.Cases..........................................................................................................................................2

  B.Statutes......................................................................................................................................4

1

# RECEIVED

## SEP 1 0 2010

Clerk, U.S. District and
Bankruptcy Courts

C.Rules..................................................................................................................................4

III.INTRODUCTION AND SUMMARY OF ARGUMENT..................................................5

IV.PROCEDURAL HISTORY.................................................................................................6

V.TECHNICAL AND LEGAL BACKGROUND...................................................................7

   A.Internet Protocol Addresses.............................................................................................7

      1.Definition...............................................................................................................8

      2.Purpose..................................................................................................................8

      3.Chart 1--ARIN Whois for 70.161.203.26............................................................9

      4.Chart 2--Cox Communication's Location Information.........................................9

      5.Chart 3-Geolocation Information.......................................................................11

   B.Personal Jurisdiction Under D.C. St. §13-423.............................................................12

VI.ARGUMENT.....................................................................................................................12

   A.This Court Lacks Personal Jurisdiction over Moving Defendants and Dismissal is Appropriate Under Fed. R. Civ. P. 12(b)(2)......................................................................................12

   B.Because The Court Lacks Personal Jurisdiction over Moving Defendants, the Subpoena for Moving Defendants' Records with Cox Communications Should be Quashed..................................18

   C.Because the Joinder of All Defendants Is Improper In This Action, The Moving Defendants Should Be Dismissed and the Subpoena Quashed............................................................19

   D.Plaintiffs Are Improperly Seeking the Benefits of MDL Litigation Without First Complying With the MDL Requirements....................................................................................................21

VII.CONCLUSION.................................................................................................................23

## II.  <u>TABLE OF AUTHORITIES</u>

**A.    Cases**

<u>ALS Scan Inc. v. Digital Service Consultants Inc.</u>, 293 F.3d 707 (4th Cir. 2002)..........................14

<u>Arista Records LLC v. Does 1-16</u>, 2009 WL 414060 at *8 (N.D.N.Y. 2009)...............................21

\* Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)..................................................14, 15, 17, 18

\* Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998).......................5-6, 14, 15, 16, 17, 18

BMG Music v. Does 1-4, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at \*5-6 (N.D. Cal. July 31, 2006)......................................................................................20

Caribbean Broadcasting System, Ltd., v. Cable & Wireless, PLC,  148 F.3d 1080, 1089 (D.C. 1998)......................................................................................17

Elektra Entm't Group, Inc. v. Does 1-9, 2004 WL 2095581, at \*8 (S.D.N.Y. 2004) (not cited)...21

\* GTE New Media Services Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000).... 13, 16, 17

Hanson v. Denckla, 357 U.S. 235, 251 (1958).............................................................17

In re Cases Filed by Recording Companies, filed in Fonovisa, Inc. et al. v. Does 1-41 (No. A-04-CA-550 LY), Atlantic Recording Corporation, et al. v. Does 1-151 (No. A-04-CA-636 SS), Elektra Entertainment Group, Inc. et al. v. Does 1-11 (No. A-04-CA-703 LY); and UMG Recordings, Inc., et al. v. Does 1-51 (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004)...............................................20

In re Library Editions of Children's Books, 299 F. Supp. 1139 (Jud.Pan.Mult.Lit. 1969)...........22

\* International Shoe v. State of Washington, 326 U.S. 310, 316 (1945)......................5, 12, 13, 18

LaFace Records, LLC v. Does 1-38, No. 5:07-CV-298-BR, 2008 WL 544992, at \*2 (E.D.N.C. Feb. 27, 2008)......................................................................................20

Lewy v. Southern Poverty Law Center, Inc. ____ F.Supp.2d. ____ , 2010 WL 2747441, \*1 (D.D.C. July 13, 2010)......................................................................................18

LVRC Holdings v. Brekka, 581 F.3rd 1127, 1130 (9th Cir. 2009)....................................7

Sinclair v. TubeSockTedD, 596 F. Supp. 2d 128, 133 (D.D.C. 2009)....................................13, 17

Tele-Media Co. of Western Connecticut v. Antidormi, 179 F.R.D. 75 (D.Conn. 1998)...............20

* Trager v. Wallace Berrie & Co., Inc., 593 F.Supp 223, 225 (D.D.C. 1984)..................16, 17, 18

U.S. v. Heckenkamp, 482 F.3rd 1142, 1144 (9th Cir. 2007).............................................................7

United States v. Phillip Morris, Inc., 116 F.Supp.2d 116, 120 n. 4 (D.D.C.2000).......................18

* World-Wide Volkswagen Corp v. Woodson, 444 U.S. 286, 297 (1980).........................12, 13, 17

**B.    Statutes**

28 U.S.C. §1407................................................................................................................. 22

28 U.S.C. §1407(a)...............................................................................................................21

D.C. St. §13-423...................................................................................................................5,6

DC St. 13-423(a)(3)..........................................................................................................12, 14

DC St. 13-423(a)(4)......................................................................................................5, 12, 14

**C.    Rules**

Fed. R. Civ. P. 12(b)(2)....................................................................................................5, 6, 12

Fed. R. Civ. P. 20...................................................................................................................19

Fed. R. Civ. P. 21...................................................................................................................21

Fed. R. Civ. P. 45(c)(3)............................................................................................................5

Fed. R. Civ. P. 45(c)(3)(A)(iv)................................................................................................6, 18

COME NOW the Moving Defendants, for themselves alone, by and through their attorney of record and respectfully submit this Motion to Quash the subpoena issued by the Plaintiffs on or about

April 26, 2010 pursuant to Fed. R. Civ. P. 45(c)(3) and to dismiss Moving Defendants from the action

pursuant to Fed. R. Civ. P. 12(b)(2). Said Motion shall consist of this preamble, the attached Points and

Authorities, the Declaration of the individual Moving Defendants [Exhibit A] and oral argument, if

desired by this Honorable Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## III. INTRODUCTION AND SUMMARY OF ARGUMENT

This Omnibus Motion is brought by some[1] of the 1,653 people sued by Plaintiff in the instant

action. Moving Defendants collectively contest this motion, as they are not residents of the District of

Columbia, and lack any continuing contacts with this forum, let alone "regular" and "persistent"

contact required to confer jurisdiction under DC Stat. 13-423(a)(4).  Indeed, the Moving Defendants

even lack the "minimum contacts" with this forum that are necessary to confer personal jurisdiction, as

articulated by the U.S. Supreme Court in  International Shoe Co. v. State of Washington, 326 U.S. 310,

316 (1945) and its progeny.

Over a decade ago, this Court determined that the **only** way a Plaintiff could establish personal

jurisdiction in this Court over nonresident defendants was to comply with the provisions of the

District's "long arm" statute, as set forth in DC Stat 13-423. *See* Blumenthal v. Drudge, 992 F. Supp.

---

[1] In order to protect their identity and not moot this Motion, the Moving Defendants have adopted
pseudonyms such as "Moving Defendants", "John Doe", "Jane Doe" etc.  If the Court wishes, the
moving defendants will disclose their true names to the Court in an *in camera* filing. Furthermore, each
individual Moving Defendant has executed a Declaration [Exhibit A] which identifies their IP address
as referenced by Plaintiff's subpoena. A list of the Moving Defendants in this action is also available to
the court as Exhibit B to this Brief.

44, 53 (D.D.C. 1998).  Furthermore, "**Plaintif[f]** ha[s] the burden of establishing that this Court has personal jurisdiction over defendant[s]…and alleging specific facts upon which personal jurisdiction may be based." Blumenthal, Id., at 53. (Emphasis added).  For the reasons set forth in greater detail in the following sections, Plaintiff neither has met nor can meet the tests for *in personam* jurisdiction set forth by DC Stat. 13-423 as explained by this Court's holding in Blumenthal.  Accordingly, dismissal of Moving Defendants from this action pursuant to Fed. R. Civ. P. 12(b)(2) is necessary and appropriate.

Because this Court lacks personal jurisdiction over the Moving Defendants and the only purpose of the subpoena issued by Plaintiff to Moving Defendants' Internet Service Providers is to disclose Moving Defendants' true names and identities so that they may be served with a summons and complaint in this action, enforcing the subpoena would violate the Court's duty to avoid imposing an undue burden on Moving Defendants.  Accordingly, completely quashing the subpoena and dismissing this action pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iv) is the most reasonable course of action this court should take.

Finally, Plaintiff knew, or could have easily discovered through the use of free, public domain internet tools the general geographic location of the Moving Defendants.  The fact is that neither the Moving Defendants' computers, nor their respective ISPs were located within the boundaries of this District at the time of the alleged infringement.  Despite this knowledge Plaintiff nonetheless pursued an action in this Court, and thus an award of reasonable attorneys' fees and costs against Plaintiff and in favor of Moving Defendants is appropriate and just.

## IV.  PROCEDURAL HISTORY

On or about March 23, 2010, Plaintiff filed a complaint [Dkt. 1] alleging, in pertinent part, that 2,000 persons, named as "Does", downloaded a movie—"The Steam Experiment (a/k/a 'The Chaos Experiment')"—to which it claimed to own the exclusive copyright.  [Dkt. 1 at 1, ¶3 - 3, ¶6].  Plaintiff asserted that it did not know the true names or identities of the persons who allegedly downloaded its movie via a BitTorrent peer-to-peer protocol ("P2P") and so it made a motion for discovery to allow it to issue subpoenas to various Internet Service Providers ("ISPs") seeking "the name, current (and permanent) addresses, telephone numbers, e-mail addresses and Media Access Control addresses of all individuals whose IP addresses are listed in the attached spreadsheet." [Dkt. 26, Court-Directed Notice Regarding Issuance of Subpoena Seeking Disclosure of Your Identity, at 2, ¶1].

On July 20, 2010, Plaintiff filed a Motion for an Extension of Time where it initially mentioned lowering the total number of defendants referenced to 1,653 [Dkt. 28, at 1-2,]. This was later reflected in the Plaintiff's First Amended Complaint [Dkt. 30]. Time Warner in turn, filed a motion to quash the subpoenas.  On June 7, 2010 this Court, *sua sponte*, issued an order to show cause why this case should not be dismissed based on misjoinder. On July 2, 2010, this Court elected not to dismiss the case on misjoinder grounds but stayed the responses to the subpoenas and directed the parties to draft a joint notice to the ISPs customers to be delivered by the ISP along with the subpoena.

This Motion to Quash and Motion to Dismiss follows.

## V.  TECHNICAL AND LEGAL BACKGROUND

**A.      Internet Protocol Addresses**

1.      Definition

Any customer of an ISP, such as the Moving Defendants, who connects their computer to the internet via the ISP is assigned an Internet Protocol (IP) address.  *See also* U.S. v. Heckenkamp, 482 F.3rd 1142, 1144 (9th Cir. 2007) ("An IP address is comprised of four integers less than 256 separated by periods").  In addition to the customer's IP address, the ISP's network is also assigned its own IP address. *See generally* LVRC Holdings v. Brekka, 581 F.3rd 1127, 1130 (9th Cir. 2009).

A customer's IP address can either be "static" or "dynamic".  A "static" IP address, as its name would indicate, remains the same over time whether or not the computer and router are turned on or not. If the computer and/or router are turned off, when they are turned back on the ISP will reassign the same address to all computers on its network which have been designated as "static" IPs.[2]  By contrast, a "dynamic" IP address is reassigned by the ISP to the customer periodically within certain parameters set by the ISP's network.

2.      Purpose

The purpose of an IP address is to route traffic efficiently through the network. "IP addresses specify the locations of the source and destination nodes in the topology of the routing system. For this purpose, some of the bits in an IP address are used to designate a subnetwork."[3]

As a result, IP addresses serve as a useful tool to determine the general geographic location of both the ISP and the user.  A number of public domain tools are available on the internet, such as ARIN

---

[2] "IP Address: IP Address Assignment: Methods" http://en.wikipedia.org/wiki/IP_address#cite_note-rfc791-1 (last visited August 26, 2010).

[3] "IP Address" http://en.wikipedia.org/wiki/IP_address#cite_note-rfc791-1  (last visited August 26, 2010).

Whois, available at https://ws.arin.net/whois/, to determine the city, state and country where an IP address is located.  For example, a query submitted to ARIN's Whois on the IP address listed on Plaintiff's subpoena for John Doe #2, one of the Moving Defendants  returns the following result as shown in Chart 1, below:

3.      **Chart 1**--ARIN Whois for 70.161.203.26

Cox Communications Inc. NETBLK-COX-ATLANTA-10 (NET-70-160-0-0-1)
              70.160.0.0 - 70.161.255.255
Cox Communications NETBLK-HR-RDC-70-160-0-0 (NET-70-160-0-0-1)
              70.160.0.0 - 70.191.255.255


\# ARIN WHOIS database, last updated 2010-08-25 20:00
\# Enter ? for additional hints on searching ARIN's WHOIS database.
\#
\# ARIN WHOIS data and services are subject to the Terms of Use
\# available at https://www.arin.net/whois_tou.html


Clicking on the "NET" links discloses the location of Moving Defendants' ISP, Cox

Communications, as shown in Chart 2.

4.      **Chart 2**--Cox Communication's Location Information

OrgName:   Cox Communications Inc.
OrgID:     C01171699
Address:    1400 Lake Hearn Dr.
City:       Atlanta
StateProv:  GA
PostalCode: 30319
Country:    US

NetRange:   70.160.0.0 - 70.161.255.255
CIDR:       70.160.0.0/13
NetName:    NETBLK-COX-ATLANTA-10
NetHandle:  NET-70-160-0-0-1
Parent:     NET-70-0-0-0-0
NetType:    Reassigned
NameServer: NS.COX.NET
NameServer: NS.WEST.COX.NET
NameServer: NS.EAST.COX.NET
Comment:    For legal requests/assistance please use the following contact information:
Comment:
Comment:    Cox Subpoena Phone: 404-269-0100
Comment:

10

Comment:    Cox Subpoena Info: http://www.cox.com/policy/leainformation/default.asp
RegDate:    2003-10-28
Updated:    2007-03-27

OrgAbuseHandle: IC146-ARIN
OrgAbuseName:   Cox Communications Inc
OrgAbusePhone:  +1-404-269-7626
OrgAbuseEmail:  abuse@cox.net

OrgTechHandle: WEILJ-ARIN
OrgTechName:   Weil, Jason
OrgTechPhone:  +1-404-269-6809
OrgTechEmail:  jason.weil@cox.com

# ARIN WHOIS database, last updated 2010-08-25 20:00
# Enter ? for additional hints on searching ARIN's WHOIS database.
#
# ARIN WHOIS data and services are subject to the Terms of Use
# available at https://www.arin.net/whois_tou.html

Thus, with a few clicks, counsel for the Plaintiff (or anyone else) could have discovered that the

IP addresses which are the subject of their subpoena receive internet service through Cox

Communications and that Cox Communications' main server is based in Atlanta, Georgia.[4] Similarly,

the notation "NETBLK-HR-RDC" in Chart 1 refers to the Roanoke, Virginia regional data center for

Cox Communications. To verify this information, a user can access a free tool like

http://whatismyipaddress.com/ and discover where the holder of the IP address is physically located.

Entering "70.161.203.26" renders the following result in Chart 3.

---

[4]Although we use the example of Cox in this motion, the court should be aware that the same result
would hold true for individuals connecting through Comcast, Time-Warner Cable or any ISP's networks
to access the internet. Comcast is headquartered in Philadelphia, PA, whereas Time-Warner Cable is
centrally located in New York, NY.

5.      **Chart 3**-Geolocation Information

General IP Information

| | |
|---|---|
| **Hostname:** | ip70-161-203-<br><br>26.hr.hr.cox.net |
| **ISP:** | Cox Communications |
| **Organization:** | Cox Communications |
| **Proxy:** | None detected |
| **Type:** | Broadband |
| **Assignment:** | Dynamic IP |
| **Blacklist:** | |

Geolocation Information

| | |
|---|---|
| **Country:** | United States |
| **State/Region:** | Virginia |
| **City:** | Chesapeake |
| **Latitude:** | 36.6463 |
| **Longitude:** | -76.2576 |
| **Area Code:** | 757 |
| **Postal Code:** | 23322 |

Thus, without any of the information sought in the subpoena, the Plaintiff already **knows** that

the customer's ISP is located in Atlanta, Georgia, and that John Doe #2 was located in Roanoke,

Virginia on the date and time of the alleged infringement.  Thus, neither the ISP (Cox, in this example)

nor John Doe #2, one of the Moving Defendants, are subject to this Court's jurisdiction, as set forth

below. The same rationale and reasoning can also be applied for each of the remaining Moving

Defendants.

**B.      Personal Jurisdiction Under D.C. St. §13-423**

As set forth in Moving Defendants' Declaration, the Moving Defendants are not residents of the District of Columbia, none own nor have interest in any real property located in the District of Columbia, none have contracted with Plaintiff or anyone else to supply services in the District of Columbia, none have agreed to insure or act as surety for any person or entity in the District of Columbia and are not in a parent or child relationship with the Plaintiff.

Accordingly, the only potential grounds for jurisdiction under the District's long-arm statute as set forth in DC St. 13-423(a)(3), is "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia" and DC St. 13-423(a)(4) "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if [Moving Defendants] **regularly** does or solicits business, engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." (DC St. 13-423(a)(4), emphasis added).

## VI. ARGUMENT

**A.      This Court Lacks Personal Jurisdiction over Moving Defendants and Dismissal is Appropriate Under Fed. R. Civ. P. 12(b)(2)**

These constitutional standards are burdens of the plaintiff, as a matter of fairness, based on the understanding that defendants should not be forced to have their interests decided by a jurisdiction with which he has had no contact. These requirements "give[ ] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp v.

13

Woodson, 444 U.S. 286, 297 (1980). In International Shoe, the high court noted that the minimum

contacts assessment "cannot simply be mechanical or quantitative" in nature, and instead must depend

on the "*quality and nature of the activity* in relation to the fair and orderly administration of the laws

which it was the purpose of the due process clause to insure." International Shoe Id. at 319.

Nearly 10 years ago, the D.C. Circuit court, in  GTE New Media Services Inc. v. BellSouth

Corp., 199 F.3d 1343 (D.C.Cir. 2000), applied the standards set forth in World-Wide Volkswagen and

International Shoe to the concept of the internet, to reject a theory strikingly similar to the plaintiff's

current position. In GTE, the plaintiffs asserted personal jurisdiction based on a claim that the

defendants acted in concert to redirect users in the District away from the plaintiff's directory and

website, to that of the defendants. Id. at 1346. In rejecting the plaintiff's theory, the court explained that

it was not enough for plaintiffs to demonstrate personal jurisdiction "based solely on the ability of

District residents to access defendants' websites," particularly where there was no evidence of financial

harm to the plaintiff in the District of Columbia. Id. 1349. The court added:

> **Indeed, under this view, personal jurisdiction in internet-related cases would almost always be found in any forum in the country. We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction.** … In the context of the Internet, GTE's expansive theory of personal jurisdiction would shred these constitutional assurances out of practical existence. Our sister circuits have not accepted such an approach, and neither shall we. Id. at 1350.   (Emphasis added).

More recently, this court in Sinclair v. TubeSockTedD, 596 F. Supp. 2d 128, 133 (D.D.C. 2009)

concluded that in the context of a defamation action, that the mere fact that defendant posted statements

on the internet that could be downloaded and viewed in the District of Columbia was insufficient to

establish personal jurisdiction. Similarly, in the context of infringement, the Fourth Circuit concluded

14

that the mere act of hosting infringing copyrighted material by an out-of-state ISP was insufficient to justify exercise of personal jurisdiction over the ISP in a Maryland court. <u>ALS Scan Inc. v. Digital Service Consultants Inc.</u>, 293 F.3d 707 (4th Cir. 2002).

       Even if Plaintiff's allegations are assumed to be true for the purpose of evaluating a Motion to Dismiss, Plaintiffs have identified no specific facts in either their initial or their amended complaint which would support a conclusion by this Court that Moving Defendants "caus[ed] tortious injury in the District of Columbia by an act or omission in the District of Columbia", as DC St. 13-423(a)(3) requires.  Similarly, Plaintiff has not identified any facts that would support a conclusion that Moving Defendants engaged in the "regular" and "persistent" contacts with the District of Columbia or that Moving Defendants derived "substantial revenue" from "goods used or consumed or services rendered" in the District, which would be necessary to support jurisdiction over Moving Defendants pursuant to DC St. 13-423(a)(4).  It has been settled law for a dozen years in this District that the burden is on the ***Plaintiff*** to establish that the Court possesses sufficient jurisdiction over a non-resident Defendant. <u>Blumenthal</u>, <u>id.,</u> at 53.

       This principle was reinforced by the U.S. Supreme Court's holding last term in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009).  In <u>Iqbal</u>, the Court held that "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that **because they are no more than conclusions**, are not entitled to the assumption of truth. " <u>Iqbal</u>, <u>id,</u>. at 1950.  (Emphasis added).

       The <u>Iqbal</u> Court recognized that a motion to dismiss usually, if not always, comes before the Court prior to discovery. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court

15

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, Id., at 1950. However, in the instant action such "well-pleaded factual allegations", with regard to the Court's personal jurisdiction over the Moving Defendants are conspicuous by their absence from Plaintiff's First Amended Complaint.

Plaintiff asserts "Although the true identity of each Defendant is unknown to Plaintiff at this time, on information and belief, each Defendant may be found in this District and/or a substantial part of the acts of infringement complained of herein occurred in this District." [Dkt. 30 at 2, ¶5].  However, Plaintiff fails to identify *any* facts in support of these bare legal conclusions, much less any facts which are specific to any one of the Moving Defendants, as opposed to the other 1,600+ defendants in the action. In fact, the very information Plaintiff ***uses*** to support its claim of infringement against the Moving Defendants generally, mainly, the offending IP address, indicates that none of the Moving Defendants actually reside in this District  (*See* Exhibit A, Attached Declarations of the Moving Defendants; Exhibit B, Table of Doe Defendants).

Plaintiff's other assertions fare no better when weighed under the scales of Iqbal and Blumenthal,  For example, Plaintiff claims "On information and belief, personal jurisdiction in this District is proper because each Defendant, without consent or permission of Plaintiff exclusive rights owner, distributed, and offered to distribute over the internet copyrighted works for which Plaintiff has exclusive rights. Such unlawful distribution occurred in every jurisdiction in the United States, including this one." [Dkt. 30 at 2, ¶5].

It would be difficult to draft a ***more*** defective claim, comprised as it is of purely conclusory statements that the Court possesses personal jurisdiction over Moving Defendants and other Defendants

16

post-Iqbal than the one referenced above.  Indeed, Plaintiffs even fail to comply with the test previously set forth in Blumenthal. "In order to establish personal jurisdiction under this provision a plaintiff must make a *prima facie* showing that (1) plaintiff suffered a tortious injury in the District of Columbia; (2) the injury was caused by the defendant's act or omission outside of the District of Columbia; and (3) defendants had one of three enumerated contacts with the District of Columbia." Blumenthal, Id., at 53.

The "three enumerated contacts" referred to in Blumenthal were previously defined in Trager v. Wallace Berrie & Co., Inc., 593 F.Supp 223, 225 (D.D.C. 1984) **as "regularly doing or soliciting business** within the District of Columbia; **engaging in any other persistent course of conduct** within the District of Columbia; or **deriving substantial revenue from goods used or consumed, or services rendered**, in the District of Columbia." Trager, Id., at 225. (Emphasis added).

Plaintiff identifies **no** facts which would support a finding that the individual Moving Defendants "regularly" did or solicited business within the District, nor any facts which would support a claim that Moving Defendants engaged in any "persistent course of conduct" inside the District or derived **any** revenue, let alone "substantial" revenue, from the District of Columbia.

Plaintiff's assertions—again, absent any supporting facts—that certain ISPs are "present" within this judicial district is equally unhelpful to their cause. The ISPs are not defendants in this action and even if they were, the Court would still need to evaluate whether or not it possessed personal jurisdiction over each individual Defendant[5].

---

[5]Even if the Court were to assume for the purposes of this Motion that the alleged infringement actually occurred as described by Plaintiff, the proper venue for a lawsuit such as the instant action would either be where the Defendant allegedly downloaded the material (as determined by their IP address) or the venue where their ISP's server was based.  For example, in the case of John Doe #2, that would be the federal district court for the Western District of Virginia (where John Doe #2 resides) or Atlanta (where

In truth, what they are asserting is little more than an argument for generalized "Internet Jurisdiction," something this very court has rejected in <u>GTE.</u> 199 F.3d at 1350.

Were the mere act of downloading over the internet sufficient to create personal jurisdiction, this court would effectively be stating that any act made on the internet—criminal, tortious, infringing, innocent or otherwise—would always create the necessary minimum contacts to permit suit in *any* jurisdiction. Despite the rapidity of technological change, the courts have refused to let such change "herald[] the eventual demise of all restrictions on the personal jurisdiction of state courts" or the erosion of these principles. <u>Hanson v. Denckla</u>, 357 U.S. 235, 251 (1958).  In truth, Plaintiff "has alleged absolutely nothing, … to indicate that a court in the District of Columbia might constitutionally assert jurisdiction" over the Moving Defendants, beyond the barest of inferences that the alleged act of infringement may have occurred in "every jurisdiction in the United States," or that the ISPs (here Cox and Comcast) maintain offices in the District. *See* <u>Caribbean Broadcasting System, Ltd., v. Cable & Wireless, PLC,</u>  148 F.3d 1080, 1089 (D.C. 1998); [Dkt. 30 at 2-3, ¶5].  Such forms of isolated, speculative and altogether unsupported forms of contact are rarely even sufficient to support jurisdictional discovery, let alone a finding for personal jurisdiction.  <u>Caribbean Broad. Sys.</u> <u>Id</u>. at 1090.

Since Plaintiff has utterly failed to meet its burden of establishing that this Court, pursuant to the standards set forth in <u>Trager</u>, <u>Blumenthal,</u>  <u>Iqbal</u>, <u>GTE</u>, <u>World-Wide Volkswagen</u>, <u>Sinclair</u> or <u>Hanson,</u> possesses personal jurisdiction over Moving Defendants as nonresidents of the District of Columbia, the Court should dismiss the actions against the Moving Defendants, and quash the

_____

Cox Communications is based).

subpoenas requesting their personal information. The court should also award Moving Defendants

reimbursement of their reasonable attorneys' fees and costs.

Finally, in contrast to a motion to dismiss this case under Federal Rule of Civil Procedure 12(b)

(6), "the Court **need not** treat all of a plaintiffs' allegations as true" for purposes of determining

whether personal jurisdiction exists over any of the Moving Defendants. *See:* Lewy v. Southern

Poverty Law Center, Inc. ____ F.Supp.2d. ____ , 2010 WL 2747441, *1 (D.D.C. July 13, 2010).

Instead, the Court "may receive and weigh affidavits and any other relevant matter to assist it in

determining the jurisdictional facts." United States v. Phillip Morris, Inc., 116 F.Supp.2d 116, 120 n. 4

(D.C.D.C.2000).  In this case, the plaintiffs' own admissions attest to the fact that it is a trivial matter to

identify each individual Moving Defendant's "general geographic area" and location based on their IP

Address.  [Dkt. 3-2, Declaration of Patrick Achache in Support of Plaintiff's Motion for Leave to Take

Discovery Prior to Rule 26(f) Conference ¶ 12]. As explained in this brief, and by past declarations of

the *Amici*, numerous free tools exist that could assist the Plaintiff in this matter [Dkt. 21, Affidavit of

Seth Schoen  ¶ 4]. Suing in the District of Columbia and exhausting the court's limited time and judicial

resources should not be the preferred or condoned means of doing so.

### B.    Because The Court Lacks Personal Jurisdiction over Moving Defendants, the Subpoena for Moving Defendants' Records with Cox Communications Should be Quashed

Pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iv), this Court must quash a subpoena when it appears

that the subpoena would subject "a person" to undue burden. For the reasons set forth above, this Court

lacks personal jurisdiction over Moving Defendants pursuant to International Shoe, Blumenthal,

Trager, and Iqbal.  Plaintiffs have alleged no facts which would indicate they believe the Moving

Defendants possess information which would be relevant to this case if any individual defendant were a non-party.  Accordingly, if the Moving Defendants cannot be added to this action as individual Defendants in this Court, than there is no justification for the undue burden placed upon the Moving Defendants, including but not limited to the invasion of the Moving Defendants' privacy associated with the disclosure of each Moving Defendant's  name, address and contact information.  The subpoena should therefore be quashed.

### C.     Because the Joinder of All Defendants Is Improper In This Action, The Moving Defendants Should Be Dismissed and the Subpoena Quashed

As stated eloquently by the Amici in a similar case also before this court*, "*There is little doubt that Plaintiff's joinder of … defendants in this single action is improper and runs the tremendous risk of creating unfairness and denying individual justice to those sued." Achte/Neunte Bol Kino Beteiligungs GMBH & CO KG, Case: 1:10-cv-00453-RMC, Dkt. 26, Memorandum of Amici Curiae Electronic Frontier Foundation, Public Citizen, American Civil Liberties Union Foundation and American Civil Liberties Union of the Nation's Capital in Support of Third Party Time Warner Cable's Motion to Quash or Modify Subpoena, at 10, ¶4.

While Fed. R. Civ. P. 20 allows for joinder of individual claims against multiple defendants, it requires that all claims arise from a single transaction or a series of closely related transactions. Specifically:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed.R. Civ. P. 20.

Thus, in order for the *en masse* joinder proposed by Plaintiff to be proper, three conditions must be met:  first, the right to relief must be "asserted against them jointly, severally or in the alternative"; second, the claim must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences"; and finally,  there must be a common question of fact or law common to all the defendants. Id.

Here, the plaintiff has not asserted any claim that John Doe #2 or any of the other Moving Defendants acted in concert with, is a co-conspirator with, or otherwise committed the "same transaction, occurrence or series of transactions or occurrences" with *any* of the Doe defendants. Rather, each defendant is alleged to have copied portions of the copyrighted work individually, separately, on different times and dates, and across different locations.

As this Court is aware, joinder based on *separate* but similar acts of copyright infringement over the internet has been repeatedly rejected by courts across the country.[6] Courts have similarly rejected joinder based on use of the same technology. *See:* Tele-Media Co. of Western Connecticut v. Antidormi, 179 F.R.D. 75 (D.Conn. 1998) (denying joinder of 104 defendants who each used similar

---

[6] LaFace Records, LLC v. Does 1-38, No. 5:07-CV-298-BR, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008) ("[M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder."); BMG Music v. Does 1-4, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006) (court severed multiple defendants in action where the only connection was use of the same ISP to allegedly commit infringement); In re Cases Filed by Recording Companies, filed in Fonovisa, Inc. et al. v. Does 1-41 (No. A-04-CA-550 LY); Atlantic Recording Corporation, et al. v. Does 1-151 (No. A-04-CA-636 SS), Elektra Entertainment Group, Inc. et al. v. Does 1-11 (No. A-04-CA-703 LY); and UMG Recordings, Inc., et al. v. Does 1-51 (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004), RJN Ex. A, (dismissing without prejudice all but first defendant in each of four lawsuits against a total of 254 defendants accused of unauthorized music file-sharing).

technology to infringe plaintiff's pay-per-view programming, because defendants did not act in concert).

Here, the only possible connection between the 1,600+ other Does, and any one of the Moving Defendants is the Plaintiff's assertion that each is connected to the others via the internet and use of the BitTorrent program to infringe on the Plaintiff's copyrighted work. There is no demonstrable proof showing that any of the Moving Defendants either seeded or downloaded the copyrighted work from other individual Doe defendants. Nor do we believe that the Plaintiff could reliably prove such a connection through jurisdictional discovery.

Moreover, John Doe #2 and the other Moving Defendants may have different defenses available compared to the other Does. Unlike other infringement cases where joinder has been maintained,[7] against a similar, localized and "finite community" of alleged infringers, here we literally have thousands of defendants located across the United States, with differing potential defenses available. While it may be convenient for Plaintiffs' attorneys (and their business model) to sue in accordance with a few actions in the District, Plaintiffs' convenience is not, and should not be *the* basis for joinder.

Fed. R. Civ. P. 21 authorizes the Court to cure the improper joinder of parties by acting "on its own . . . at any time," to "drop a party." Accordingly, attorneys for the Moving Defendants respectfully request that the Court cure Plaintiff's improper joinder of the thousands of defendants named in this case by severing all but Defendant Doe 1 and dropping the remaining Does, including the Moving Defendants, from this action.

---

[7] Arista Records LLC v. Does 1-16, 2009 WL 414060 at *8 (N.D.N.Y. 2009); Elektra Entm't Group, Inc. v. Does 1-9, 2004 WL 2095581, at *8 (S.D.N.Y. 2004) (not cited).

**D.**     **Plaintiffs Are Improperly Seeking the Benefits of MDL Litigation Without First Complying With the MDL Requirements**

In pertinent part, 28 U.S.C. §1407(a)  provides "When **civil actions** involving one or more common questions of fact are pending in **different districts**, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." (Emphasis added).

Since 1968, the United States Panel for Multidistrict Litigation ("Panel"), which is the panel charged by Congress with executing the provisions of 28 U.S.C. §1407, has considered over 2,000 motions for centralization covering more than 300,000 individual cases (and millions of individual claims)[8] covering everything from product liability to "mass tort" cases like airplane crashes. Assuming a case meets the statutory requirements for consolidation (i.e. at least two cases pending in two different judicial districts), the Panel must decide if consolidation is appropriate. *See generally* In re Library Editions of Children's Books, 299 F. Supp. 1139 (Jud.Pan.Mult.Lit. 1969).

If the Plaintiff truly had a good-faith belief that *some* legitimate reason existed (other than the convenience of Plaintiff's counsel) to consolidate this action in this Court notwithstanding the lack of personal jurisdiction over the Moving Defendants, the MDL statute offers them a clear remedy.  What Congress *intended* for plaintiffs in this type of situation to do was to individually sue Defendants in the

---

[8] "An Overview of the United States Judicial Panel on Multidistrict Litigation: Historical Summary" http://www.jpml.uscourts.gov/General_Info/Overview/overview.html (last visited September 4, 2010).

Courts that *do* possess personal jurisdiction over them and *then* file a motion to consolidate the cases for pretrial purposes as 28 U.S.C. §1407 contemplates.

What Plaintiff manifestly may *not* do is acquire the benefits of an MDL by arbitrary forum shopping rather than by strict compliance with the Panel's rules.  In addition to the burden Plaintiff's disregard of its obligations has placed upon the Court's scarce judicial resources and the disrespect shown to the Panel by Plaintiff's usurpation of its functions, Plaintiff's behavior has forced the Moving Defendants to incur additional legal fees and costs which would ordinarily not have to have been expended. For these reasons, dismissal of all Moving Defendants from this action and an award of attorneys' fees and costs in their favor is appropriate.

## VII.   CONCLUSION

For the reasons set forth above, the Court should DISMISS the Moving Defendants from this action, QUASH the subpoena issued for Moving Defendants' records addressed to Cox Communications and Comcast; AWARD Moving Defendants reimbursement of reasonable attorneys' fees and costs associated with this Motion and GRANT all such and other relief as it deems just and proper.

Respectfully submitted this 10th day of September 2010.

CAREY N. LENING, ESQ.
LAW OFFICE OF CAREY N. LENING
DC Bar No. 449284
1325 G. St. NW Ste. 500
Washington, DC 20005
(202) 709-4529
carey.lening@careylening.com

24

Attorney for Moving Defendants

## CERTIFICATE OF LR 7(m) COMPLIANCE

On September 7, 2010, Carey Lening, Esq., on behalf of the other undersigned counsel spoke by telephone with Nicholas Kurtz, of Dunlap, Grubb & Weaver, counsel for the Plaintiff. The parties were unable to resolve the issues presented by this motion.

CAREY N. LENING, ESQ.

## CERTIFICATE OF SERVICE

I am the attorney for the Moving Defendants.  On September 10, 2010, I sent a true and

complete copy of the foregoing MOTION TO QUASH/DISMISS to the following parties and/or their

attorneys of record via United States Mail:

Mr. Nicholas A. Kurtz, Esq.,
Dunlap, Grubb & Weaver PLLC
199 Liberty Street S.W.
Leesburg, VA 20175

Ms. Saquonna Wheeler
Subpoena Coordinator
Cox Communications
1400 Lake Hearn Drive
Atlanta GA 30319

Comcast Legal Response Center
NE&TO
650 Centerton Road
Moorestown, NJ 08057

I declare under penalty of perjury under the laws of the United States that the foregoing
is true and correct.

CAREY N. LENING, ESQ.
LAW OFFICE OF CAREY N. LENING
DC Bar No. 449284
1325 G. St. NW Ste. 500
Washington, DC 20005
(202) 709-4529
carey.lening@careylening.com